Mathews v. Loth.

---

JOHN MATHEWS *et al.*, Respondents, v. ADOLPH LOTH *et al.*, Appellants.

St. Louis Court of Appeals, May 12, 1891.

**Attachments:** FRAUDULENT CONCEALMENT OF PROPERTY OR EFFECTS. An insolvent debtor, in anticipation of attachment proceedings by creditors, and on the advice of his attorney, secreted money for the purpose of using it in defending against such proceedings; *held* that this, as a matter of law, constituted a fraudulent concealment of the money, and ground for attachment.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*D. P. Dyer* and *Sale & Sale*, for Appellants.

*Albert Arnstein* and *Frank, Dawson & Garovin*, for respondents.

THOMPSON, J.—This case is said to be one of a series of thirty-two suits by attachment, instituted on November 20, 1889, and the days following, by creditors of the firm of A. Loth & Sons, which firm was composed of Adolph, Albert and Bernard M. Loth. The grounds on which the present attachment was sued out are that the defendants have fraudulently conveyed or assigned their property or effects so as to hinder or delay their creditors ; that the defendants have fraudulently concealed, removed or disposed of their property or effects, so as to hinder or delay their creditors; that defendants are about fraudulently to conceal, remove or dispose of their property or effects, so as to hinder or delay their creditors ; and that the debt sued for was fraudulently contracted on the part of the debtors. A plea in abatement was filed by the defendants putting in issue the allegations in the affidavit for attachment, and a trial was had thereupon, at the conclusion of which the court directed the jury that, under the evidence, they must find for the plaintiff. The propriety of this direction is substantially the only question for consideration upon this appeal.

The evidence showed, without controversy, that, on November 20, 1889, the defendants were hopelessly insolvent ; that they had long done business on a capital consisting of borrowed money only ; that, realizing their insolvency, they had either repaid in cash, or secured by transferring assets all of the capital which they had borrowed as their stake upon which to do business ; that on that day they had called a meeting of their creditors in New York, at which an arrangement had been attempted but without success ; that,

during the year, their purchases of goods for the osten-sible purposes of their trade had been largely in excess of their purchases for previous years; in short, that a state of facts existed which gave their creditors *proba-ble cause* for suing out attachments, which state of facts was known to the debtors, and that they, in conse-quence thereof, and also from information received by them from a correspondent in New York, anticipated such attachments; that, in anticipation of such attach-ments, their attorney had advised them to withdraw the money which they might have on hand and place it beyond the reach of judicial process, so that they could use it in defending against the attachments; that, acting upon this advice, one of the defendants, on several days immediately preceding November 20, withdrew from the safe and cash drawer of the defendants, and from the bank in which they kept their deposits, the sum of $3,700 in currency, and took it to his house, and there concealed it in a bureau drawer; that, about five days thereafter and prior to the suing out of this attachment, $2,500 of this currency was paid to the attorney who gave this advice, and that dispositions were made of the rest of it, at various indefinite dates, which a jury might regard as honest dispositions for firm purposes.

A voluminous record has been brought here; but we do not think it necessary to go into the facts more fully than they are disclosed in the foregoing statement. We are of opinion, that, upon the foregoing facts, the court rightly directed the jury to find for the plaintiffs on the issue raised by the plea in abatement. The evi-dence shows, without controversy or dispute, that the defendants were indebted to such an extent that, after a distribution of their property under judicial process or otherwise, among their creditors, nothing would be left for them. Having previously paid off all the debts which they owed for borrowed capital (chiefly to friends and relatives), they had no pecuniary interest in the

question, whether their creditors subjected their remaining assets to the payment of their debts by the process of attachment or otherwise.    They had no right to withdraw so much of their assets, as consisted of moneys, for the purpose of using it to defend against prospective attachments, in order that creditors who did not attach might not suffer a disadvantage at the hands of those who saw fit to attach.    If they had desired to prevent such a result, they could easily have done it by making an assignment under the statute for the benefit of their creditors.

The only remaining purpose upon which the defendants could attempt, and have attempted, to justify the hiding away of this money so as to place it beyond the reach of judicial process, was the purpose of defending their reputation as merchants against the threatened attachments, which would no doubt be prosecuted on the ground of fraud.    It is argued with ability and force that this is an honest purpose, and, being such, that a debtor has a right to withdraw enough of his property to be used for such a purpose.    In our judgment this argument will not bear analysis.    If an insolvent merchant can hide away $3,700 of his assets to be used in defending his mercantile reputation in litigation which he expects to come, he may, on the same ground withdraw and conceal all of his assets to be used for the same purpose, provided he anticipates sufficient assaults upon his reputation, and provided his reputation is in such a state as to need so much money for its defense.    When it is considered that the very assets which he thus withdraws from his creditors, and places beyond their reach, has been created by the goods which they have sold to him upon credit, it is believed that this proposition does not require any further discussion.

The remaining question is whether the subsequent act of the defendants in dealing with this money deprived the plaintiffs of the right of attachment, which

they had at the time when the money was thus withdrawn and concealed. The first concealment was a fraudulent concealment as matter of law, because the money was not withdrawn for the immediate payment of any partnership debt which then existed. This conduct undoubtedly subjected the defendants to attachments on the part of their creditors. Whether or not they could free themselves from such liability by subsequently returning the money to its proper custody, or by paying existing firm obligations with it, it is not necessary for us to decide, because the defendants' evidence failed to show that all of the money was so used, prior to the issue of the attachment in the present suit, and as to this the burden of proof was on them. Looking at the evidence from the standpoint most favorable to the defendants, the law would devolve upon them the burden of showing either that they subsequently restored the money to its original custody prior to this attachment, or else that they originally took it for the payment of existing partnership debts, and expended it for that purpose prior to the attachment.

The cases in which the judge is justified in directing the jury to find in favor of the parties sustaining the burden of proof on the issue of fraud are cases where a state of facts is undisputed, and where the law pronounces the conclusion of fraud upon such facts. *Frankenthal v. Goldstein*, 44 Mo. App. 189. In our judgment the present case was a case of this kind. The facts above detailed are confessed by the defendants. That the purpose of withdrawing the money and concealing it was to place it beyond the reach of judicial process and to use it in the defense of anticipated suits by attachments, if it should become necessary to use it for that purpose, is shown by the testimony of one of the defendants. The state of facts is not a state of facts upon which fair-minded men would draw different conclusions upon the question of fraud or no fraud; but

it is a state of facts, upon which the law itself pronounces the conclusion.     We hold that the general rule is subject to possible exceptions, which need not be. anticipated or conjectured, of which this case is not one; that there is no such thing known to the law as an honest concealment of his assets by an insolvent debtor, for the purpose of placing them beyond judicial process, unless it be assets which are specifically exempt by statute from execution, and with which his creditors, therefore, have no concern.

It is ordered that the judgment of the circuit court be affirmed.     All the judges concur.